**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ELECTROLUX CONSUMER PRODUCTS, INC.

Plaintiff,

v. Case No.: ____________________

AMGUARD INSURANCE COMPANY,

Defendant.
________________________________/

**COMPLAINT**
**DECLARATORY RELIEF REQUESTED**
**DEMAND FOR JURY TRIAL**

Electrolux Consumer Products, Inc. ("Electrolux") files this Complaint against AmGUARD Insurance Company ("AmGUARD"). Plaintiff shows the Court as follows:

## I. INTRODUCTION

1. On October 22, 2019, Electrolux and RR Appliance Services, Inc. ("RR") entered a written Servicer Agreement under which RR performed authorized warranty service on Electrolux appliances. Section 6 of the Agreement required RR to indemnify, defend, and hold Electrolux harmless from all claims arising out of RR's performance, including attorneys' fees and expenses. Section 4 of the Agreement required RR to name Electrolux as an additional insured on RR's commercial general liability policy.

2. Defendant AmGUARD insured RR through AmGUARD's Commercial General Liability, Businessowners Policy No. RRBP382749 (the "Policy"), effective February 16, 2022. Consistent with Section 4 of the Servicer Agreement, which required RR to name Electrolux as an additional insured on the Policy, RR obtained a blanket additional insured endorsement affording Electrolux coverage as an additional insured on the Policy. Electrolux timely tendered its defense and indemnity to AmGUARD as an additional insured under the Policy following claims asserted by underlying claimants against Electrolux related to a fire started while RR's technician was servicing a freezer. Those claims are described in more detail below.

3. Despite RR's contractual indemnity obligation and Electrolux's additional-insured status under the Policy, AmGUARD initially offered only a conditional defense to Electrolux. The conditions required Electrolux to release the very rights that the additional insured endorsement and the Servicer Agreement were intended to secure and also sought to impose a conflicted joint representation over Electrolux's objections. AmGUARD's mishandling of the claim caused significant delays in resolving the underlying litigation. At mediation, AmGUARD failed to timely appear on Electrolux's behalf, and when AmGUARD did finally make an appearance, its adjuster informed Electrolux that AmGUARD intended to reserve the Policy's full limits for RR alone, leaving Electrolux, despite its insurance coverage and RR's contractual indemnity obligation, to fund the settlement of the underlying lawsuit out of its own resources. AmGUARD also stopped timely paying Electrolux's

defense costs and ultimately would not pay them at all until Electrolux was forced to report AmGUARD to the Florida Department of Financial Services.

4. Due to AmGUARD's aforementioned failures, Electrolux seeks declaratory relief, and damages for breach of contract, waiver and estoppel, and bad faith from AmGUARD.

## II. PARTIES, VENUE, AND JURISDICTION

5. Electrolux is a Delaware company with its principal office located in Charlotte, North Carolina.

6. Defendant AmGUARD Insurance Company is a Delaware company, with its principal office located in Wilkes-Barre, Pennsylvania. AmGUARD is a foreign corporation for the purposes of jurisdiction and venue.

7. Defendant AmGUARD issued the Policy in Florida, which provided coverage to RR and, as an additional insured, to Electrolux for RR's operations in Florida.

8. This is an action for declaratory relief pursuant to Rule 57 of the Federal Rules of Civil Procedure, 28 U.S.C. § 2201, and Chapter 86 of the Florida Statutes, and for breach of contract, waiver and estoppel, and bad faith.

9. Subject matter jurisdiction is proper pursuant to 28 U.S.C. §§ 1332 and 1367, because there is complete diversity among the Parties, and the amount in controversy exceeds the sum of $75,000.00, exclusive of all interest and costs.

10. Personal jurisdiction and venue are proper in this Court pursuant to 28 U.S.C. § 1391, because RR performed the operations giving rise to this action in

Florida, the underlying occurrence and resulting property damage took place in this District, and AmGUARD is subject to personal jurisdiction in this District by virtue of providing liability coverage to RR for RR's operations conducted in Florida.

## III. ALLEGATIONS COMMON TO ALL COUNTS

11. On October 22, 2019, Electrolux and RR entered into the Servicer Agreement under which RR performed authorized repair services on Electrolux appliances. A true and correct copy of the Servicer Agreement is attached hereto as **Exhibit 1**.

12. On February 16, 2022, AmGUARD issued the Policy to RR and Electrolux, effective February 16, 2022 to February 16, 2023. A true and correct copy of the Policy is attached hereto as **Exhibit 2.**

13. On September 8, 2022, while servicing a Frigidaire freezer, RR's technician operated an oxygen/acetylene torch on flammable refrigerants and abandoned the lit torch in the garage, igniting a fire that destroyed the Dyes' residence and caused bodily injury to Mr. Dye.

14. On March 22, 2023, the Dyes ("Underlying Plaintiffs") brought suit, case styled *Dye v. First Protective Insurance Company d/b/a Frontline Insurance; Electrolux Home Products, Inc. d/b/a Frigidaire, RR Appliance Services, Inc., and Eric Maurice Ashford,* Case No. 2023 CA 002782, filed in the Circuit Court of the Twelfth Judicial Circuit, Manatee County, Florida (Division B) (the "Underlying Lawsuit"), against RR and its employee, Eric Ashford ("Ashford"), as well as Electrolux for the damages and

injuries sustained in the fire. The Underlying Plaintiffs alleged vicarious liability and breach of warranty claims against Electrolux.

15. On May 19, 2023, Underlying Plaintiffs served a written offer to settle the Underlying Lawsuit for $4,203,918.04.

16. On May 22, 2023, Electrolux, as an additional insured under the Policy, tendered its defense and indemnity for the Underlying Lawsuit to AmGUARD and notified AmGUARD of the Underlying Plaintiffs' settlement offer. AmGUARD has never contested Electrolux's status as an insured or its right to coverage under the Policy.

17. On June 6, 2023, AmGUARD responded to Electrolux's tender with a "tender acceptance letter" that imposed three conditions and advised of these conditions "are not met, it will be considered rejection of this written offer of acceptance":

a. Electrolux and its insurer agree and accept that they will waive all fees and costs, legal and all other past, present, and future, and hold harmless AmGUARD and RR Appliance Services Inc. of all said costs, expenses, and fees.

b. Electrolux can be represented by the firm retained by AmGUARD. In addition, Electrolux agree they can be represented along with RR Appliance Services Inc.

c. Electrolux agrees to fully cooperate with AmGUARD, and its representatives, in the continued defense of this suit, subject to all Policy conditions.

*See* **Exhibit 3** attached hereto.

18. AmGUARD reserved "all rights and defenses" in the closing paragraph of the tender acceptance letter but did not issue a substantive reservation of rights addressing any specific coverage positions.

19. Between June 13, 2023 and June 27, 2023, Electrolux made repeated attempts to contact AmGUARD to discuss the tender acceptance conditions. AmGUARD did not meaningfully respond to any attempts made in that time.

20. On June 29, 2023, Electrolux rejected AmGUARD's conditions imposed by the tender acceptance letter, specifically objecting to the attempted imposition of joint representation, and proposed separate, independent counsel to represent Electrolux in the Underlying Lawsuit. *See* **Exhibit 4** attached hereto.

21. Notwithstanding Electrolux's June 29, 2023 rejection of joint representation, AmGUARD appointed counsel of its own selection to jointly represent RR, Ashford, and Electrolux in the Underlying Lawsuit. From May 2023 through December 2023, Hall Booth continued to jointly represent RR, Ashford, and Electrolux, despite Electrolux's continued objection based upon the clear conflict between the parties.

22. Beginning in May 2023, Electrolux's separate counsel, Bradley Arant Boult Cummings LLP ("Bradley"), performed substantive defense work on Electrolux's behalf. Despite Bradley's substantive involvement, AmGUARD refused for months to retain Bradley as Electrolux's independent counsel of record.

23. On July 5, 2023, AmGUARD acknowledged that separate counsel was likely necessary, but conditioned its agreement on selecting counsel itself or dictating billing rates, without offering any coverage-based or legal rationale for that position.

24. On August 8-9, 2023, Electrolux requested reimbursement of defense costs incurred by Bradley after its May 22, 2023 tender. AmGUARD refused, stating it had "no recollection of any agreement on reimbursing costs" and that "[a]ny bills should be [paid by] Electrolux."

25. On August 29-31, 2023, after repeated unsuccessful attempts to resolve the defense-counsel dispute, Electrolux demanded a call with AmGUARD. Electrolux raised specific concerns about the conduct of AmGUARD's appointed counsel in the joint defense and requested that AmGUARD either agree to Electrolux's proposal for separate counsel or set out its coverage position in writing. AmGUARD refused to do either.

26. On September 12, 2023, AmGUARD maintained that there was no agreement on counsel or billing rates.

27. On September 18, 2023, having received no further response from AmGUARD, Electrolux made a final formal request that AmGUARD set out its position by September 20, 2023.

28. AmGUARD did not respond to Electrolux's September 18, 2023 request by the September 20, 2023 deadline.

29. On September 27, 2023, having still received no response, Electrolux again followed up in writing, noting that it had been unable to obtain a response from

AmGUARD's appointed defense counsel regarding the status of the Underlying Lawsuit.

30. Later that day, AmGUARD responded that it had "answered everything and explained [its] current position," without providing a substantive coverage position.

31. On October 2, 2023, Electrolux issued a formal written demand to AmGUARD for separate, independent counsel, notified AmGUARD that it would seek reimbursement of all defense costs and fees, and advised AmGUARD that it would be responsible for any liability faced by Electrolux in the Underlying Lawsuit. *See* **Exhibit 5** attached hereto.

32. As of October 2, 2023, over four months after Electrolux's tender, AmGUARD had not reimbursed Electrolux's defense costs, agreed to separate counsel, or issued any substantive coverage position. Meanwhile, joint representation of RR, Ashford, and Electrolux continued.

33. On November 15, 2023, Ashford was deposed in the Underlying Lawsuit while jointly represented by AmGUARD's appointed counsel. Neither AmGUARD nor its appointed counsel informed Electrolux or Bradley that Ashford's deposition had been scheduled. During the deposition, AmGUARD's appointed joint counsel did not ask any questions in support of Electrolux's defenses, and instead his very limited inquiry focused solely on defending RR and Ashford.

34. On December 4, 2023, three weeks after Mr. Ashford's deposition, the Underlying Plaintiffs moved for leave to amend their complaint in the Underlying

Lawsuit to add additional claims against Electrolux, relying on testimony elicited during Ashford's deposition where Electrolux was not independently represented by counsel.

35. AmGUARD did not permit Bradley to enter its appearance as counsel of record for Electrolux in the Underlying Lawsuit until December 10, 2023, three weeks after Ashford's deposition and six days after Underlying Plaintiffs filed their motion to amend citing that deposition.

36. In late November 2023, the AmGUARD adjuster handling Electrolux's claim left AmGUARD's employ. AmGUARD did not identify a replacement adjuster for approximately five months, until April 9, 2024.

37. On December 18, 2023, AmGUARD's legal operations personnel confirmed that the prior adjuster was no longer with AmGUARD and directed Bradley to route invoices to a general claims inbox, without identifying a new adjuster.

38. On April 4, 2024, Electrolux received notice of a potential subrogation claim from the Dyes' homeowner's insurance carrier ("Frontline"), reflecting paid losses exceeding $1.3 million.

39. On May 13, 2024, Electrolux formally notified AmGUARD and RR of the Frontline subrogation claim and cited Section 6 of the Servicer Agreement, which requires RR to indemnify, defend, and hold Electrolux harmless from claims relating to RR's performance under the Servicer Agreement.

40. On May 13, 2024, the court in the Underlying Lawsuit granted Underlying Plaintiffs' motion for leave to amend the Complaint based on the testimony from the Ashford deposition.

41. On May 22, 2024, Underlying Plaintiffs filed their Amended Complaint, asserting six counts against Electrolux, including agency-based vicarious liability and three independent negligence theories, a significant expansion from the two counts against Electrolux in the original complaint.

42. On June 5, 2024, Underlying Plaintiffs served a formal Proposal for Settlement offering to resolve the property damage claims against Electrolux alone for an amount substantially in excess of the Policy's per-occurrence limit.

43. By September 2024, AmGUARD's repeated adjuster turnover had caused multiple prior mediations in the Underlying Lawsuit to be cancelled. At a September 3, 2024 hearing, the court ordered the parties to mediation within 30 days and specifically required adjuster attendance.

44. In the weeks preceding the court-ordered mediation, Bradley repeatedly requested pre-mediation calls with AmGUARD's adjuster to discuss the Policy's additional-insured/named-insured structure and its implications for Electrolux's distinct exposure at mediation. AmGUARD's adjuster was non-responsive for weeks at a time.

45. Shortly before the October 3, 2024 mediation, Bradley sent AmGUARD's adjuster a detailed pre-mediation report documenting, among other things, the conflict of interest arising from the joint representation of Electrolux, RR,

and Ashford by AmGUARD's appointed counsel, and noting that Underlying Plaintiffs had deposed Ashford before Electrolux obtained separate counsel. AmGUARD's adjuster received and acknowledged the report.

46. Multiple emails from Bradley to AmGUARD's adjuster went unanswered in the two weeks before mediation, until Electrolux's Associate General Counsel personally emailed AmGUARD's adjuster demanding a response.

47. The mediation went forward shortly thereafter and produced no settlement. A single AmGUARD adjuster appeared at mediation on behalf of Ashford, RR, and Electrolux despite the conflict between the defendants.

48. On February 6, 2025, Underlying Plaintiffs filed a Second Amended Complaint, further expanding the factual allegations supporting the vicarious liability count against Electrolux.

49. In 2025, AmGUARD finally bifurcated the claim file, separating RR's claim from Electrolux's additional-insured claim, and assigned Electrolux's claim a new adjuster.

50. On May 27, 2025, Frontline, as subrogee of the Dyes, filed a separate lawsuit against Electrolux and RR seeking recovery of amounts it had paid under the Underlying Plaintiffs' homeowners' policy.

51. In September 2025, after Frontline filed its subrogation lawsuit, AmGUARD confirmed it was "agreeable to handle this new litigation just as we have been handling the Dye Litigation."

52. Beginning in late 2024 and continuing through 2025, AmGUARD repeatedly failed to timely pay Bradley's invoices for defense costs, despite repeated requests and AmGUARD's own assurances that payment was forthcoming.

53. By October 2025, AmGUARD was approximately eleven months behind on payment of Bradley's invoices, with an outstanding balance exceeding $121,000.

54. Throughout AmGUARD's mishandling of Electrolux's claim, Electrolux has been forced to incur separate fees for independent coverage counsel retained to press AmGUARD to comply with its contractual and legal obligations.

55. On October 29, 2025, Bradley formally demanded that AmGUARD cure its nonpayment within ten days, advising that absent payment, Electrolux would be required to advance the outstanding fees itself.

56. On October 29, 2025, Electrolux notified AmGUARD that AmGUARD had verbally admitted its obligation to pay the outstanding invoices and had apologized for the delay but had still failed to pay. Electrolux advised AmGUARD that it was in clear breach of its obligations and warned that, absent payment by November 7, 2025, Electrolux would pursue all available remedies, including bad faith claims, punitive damages, and notice to the Florida Department of Financial Services.

57. Only after Electrolux's October 29, 2025 letters, AmGUARD issued a delayed partial payment of $86,611.50 on November 4, 2025, covering a portion of the outstanding invoices. A balance remained outstanding.

58. In the weeks following the November 4, 2025 partial payment, AmGUARD again fell behind on payment of Bradley's invoices. By January 2026, AmGUARD's outstanding balance exceeded $148,000.

59. In the weeks preceding the February 27, 2026 mediation, Bradley repeatedly sought AmGUARD's engagement on both the continued nonpayment of defense costs and the upcoming mediation. AmGUARD's adjuster did not meaningfully respond.

60. On February 25, 2026, two days before mediation, Bradley formally alerted AmGUARD in writing that Underlying Plaintiffs might attempt to negotiate a settlement involving the Policy that included only RR, leaving Electrolux without coverage. Bradley specifically asked whether AmGUARD's adjuster intended to appear at the mediation on Electrolux's behalf. AmGUARD did not respond.

61. On February 27, 2026, mediation began with no AmGUARD representative present on behalf of Electrolux. AmGUARD's adjuster for RR appeared and, at some point after mediation had begun, used AmGUARD's internal messaging system to notify AmGUARD's adjuster for Electrolux's claim, who then joined the mediation late. When the AmGUARD adjuster for Electrolux did finally appear, she made it clear to Electrolux counsel that she had no authority to offer any of the AmGUARD policy limits to resolve the claims against Electrolux. Instead, those funds were reserved for RR. As a result, AmGUARD did not participate in any of discussions with the mediator or Plaintiffs related to resolution of the claims against Electrolux. Consistent with the adjuster's express intentions to Electrolux,

AmGUARD did not offer any contribution to resolve Electrolux's exposure separate from the Policy limits it reserved for RR. The mediation did not result in a global resolution of the claims.

62. In the days following the February 27, 2026 mediation, AmGUARD's adjuster confirmed in writing that AmGUARD's sole settlement authority was limited to the amount previously tendered on behalf of RR, and that she lacked authority to offer any additional contribution on behalf of Electrolux.

63. Bradley requested that AmGUARD make an additional contribution toward resolving the claims against Electrolux. AmGUARD did not commit to any such contribution and advised only that the request remained under review by AmGUARD's management.

64. On March 4, 2026, having received no further response from AmGUARD, Electrolux notified AmGUARD in writing that it was accepting the Underlying Plaintiffs' settlement offer and would fund the settlement itself. Electrolux advised AmGUARD that AmGUARD's claims-handling conduct, including its failure to defend, excused any cooperation obligation on Electrolux's part, and Electrolux expressly reserved all rights under the Policy.

65. On March 19, 2026, having received no further response from AmGUARD regarding a contribution, Electrolux again notified AmGUARD in writing that it was proceeding to finalize the settlement on the understanding that AmGUARD consented to the settlement terms, and again reserved all rights to seek recovery from AmGUARD.

66. AmGUARD never objected in writing to Electrolux's settlement of the Underlying Lawsuit.

67. Between March 21 and March 24, 2026, Electrolux executed a Settlement Agreement and Release resolving the Underlying Lawsuit and a related subrogation action against Electrolux, funding that resolution out of its own resources. AmGUARD did not contribute any amount toward that settlement. At some point after Electrolux settled using its own funds, RR and Ashford settled with Plaintiffs on terms unknown to Electrolux, presumably giving them the entire benefit of the AmGUARD policy and excluding Electrolux.

68. On May 22, 2026, Electrolux, through counsel, filed a Civil Remedy Notice of Insurer Violation with the Florida Department of Financial Services pursuant to Fla. Stat. § 624.155, identifying AmGUARD's failure to attempt in good faith to settle Electrolux's claim, failure to adopt and implement standards for the proper investigation of claims, and failure to acknowledge and act promptly upon communications, in violation of §§ 624.155(1)(b)(1) and 626.9541(1)(i)(3)(a), (c), Fla. Stat. *See* **Exhibit 6** attached hereto.

69. Contemporaneously with the Civil Remedy Notice, Electrolux issued a written demand to AmGUARD for reimbursement of its out-of-pocket settlement of the Underlying Lawsuit, $273,764.00 for unpaid defense fees and costs owed to Bradley, and $5,909.30 for unpaid expert and litigation expenses, with payment due by June 12, 2026.

70. Section 624.155(3)(d), Fla. Stat., afforded AmGUARD sixty days from the filing of the Civil Remedy Notice to cure the violations identified therein. That cure period expired on July 21, 2026.

71. AmGUARD did not pay the amounts demanded, or otherwise cure the violations identified in the Civil Remedy Notice, by July 21, 2026.

72. On July 22, 2026, one day after expiration of the statutory cure period, AmGUARD wired payment of outstanding defense fees to Bradley. Because that payment was made after the cure period expired, there was no cure.

73. As a direct result of AmGUARD’s conduct, AmGUARD refused to timely pay Bradley’s invoices for defense costs for more than a year, notwithstanding AmGUARD’s own confirmations that it would defend Electrolux under the Policy, including its acceptance of Bradley as defense counsel and its adjuster’s verbal admission of the obligation to pay. AmGUARD’s payment of a portion of those fees on July 22, 2026, one day after the statutory cure period expired, does not cure AmGUARD’s violations and is further evidence of AmGUARD’s bad faith handling of Electrolux’s claim.

74. AmGUARD failed to attempt in good faith to settle the claims against Electrolux when it could and should have done so. AmGUARD made no attempt to resolve Electrolux’s separate exposure, reserved the entire Policy for RR alone, and refused to contribute any amount toward resolving Electrolux’s exposure. As a result, Electrolux was forced to fund the settlement of the claims against it out of its own resources, despite its insurance coverage and RR's contractual indemnity obligation.

## IV. COUNTS

## COUNT I – DECLARATORY JUDGMENT

75. Electrolux incorporates and realleges paragraphs 1 through 74 as though fully set forth herein.

76. Electrolux requests a final declaratory judgment finding that AmGUARD had an obligation under the Policy to defend and indemnify Electrolux as an additional insured, including an obligation to pay Electrolux's defense costs as they came due and to indemnify Electrolux for amounts paid to resolve the Underlying Lawsuit.

77. Electrolux timely tendered its defense and indemnity to AmGUARD as an additional insured under the Policy, giving rise to AmGUARD's obligation to defend and indemnify Electrolux.

78. There is no applicable exclusion in the Policy that would preclude AmGUARD's coverage obligations to Electrolux.

79. AmGUARD accepted Electrolux's tender and agreed to provide Electrolux a defense under the Policy.

80. AmGUARD failed to timely pay Electrolux's defense costs as they came due and has refused to indemnify Electrolux for the settlement Electrolux funded to resolve the Underlying Lawsuit, despite AmGUARD's obligations under the Policy. There exists a bona fide, actual, present, and practical need for a declaration of the Parties' rights and obligations under the Policy.

81. Electrolux also requests a declaratory judgment that AmGUARD is obligated to indemnify Electrolux for the settlement of the Underlying Lawsuit.

82. Electrolux also requests a declaratory judgment that AmGUARD has waived and is estopped from asserting any coverage defenses. *See* Count III.

83. All proper and present antagonistic or adverse interests are before the Court by proper process.

84. The Parties' relative rights and obligations under the Policy are dependent upon the facts and law applicable to the facts affecting coverage under the Policy.

85. This demand for declaratory judgment is not made for purposes of seeking a legal opinion, but rather is needed to resolve an existing dispute which creates doubt between the Parties as to their legal rights, responsibilities, and obligations under the Policy.

86. Nonetheless, AmGUARD refuses to indemnify Electrolux for the settlement arising out of the Underlying Lawsuit, giving rise to the need to file this instant lawsuit.

WHEREFORE, Electrolux seeks a judgment in its favor, declaring and adjudicating that AmGUARD was obligated to, at a minimum, defend Electrolux, timely reimburse Electrolux for defense costs, and indemnify Electrolux for the settlement of the Underlying Lawsuit, plus reasonable attorneys' fees and expenses, interest, and such other and further relief as the Court deems just and proper.

## COUNT II – BREACH OF CONTRACT

87. Electrolux incorporates and realleges paragraphs 1 through 74 as though fully set forth herein.

88. The Policy constitutes a contract between RR and AmGUARD, under which Electrolux is an additional insured entitled to enforce AmGUARD's obligations to defend and indemnify.

89. AmGUARD's June 6, 2023 tender acceptance letter constitutes a separate confirmation of Electrolux's coverage under the Policy, whereby AmGUARD agreed to defend Electrolux. *See* **Exhibit 3**.

90. AmGUARD had and has an obligation under the Policy, and under its June 6, 2023 confirmation, to pay Electrolux's defense costs as they came due and to indemnify Electrolux for the Underlying Lawsuit.

91. AmGUARD breached the Policy and its June 6, 2023 confirmation by failing to timely pay Electrolux's defense costs, notwithstanding its agreement to provide Electrolux a defense.

92. AmGUARD breached the Policy by failing and refusing to indemnify Electrolux for the settlement of the Underlying Lawsuit, despite AmGUARD's obligation to do so under the Policy.

93. As a direct result of AmGUARD's breaches, Electrolux suffered damages, including the amount it was forced to pay out of pocket to settle the Underlying Lawsuit.

WHEREFORE, Electrolux demands judgment against AmGUARD in an amount to be proven at trial for AmGUARD's breach of contract, plus reasonable

attorneys' fees and expenses, interest, and such other and further relief as the Court deems just and proper.

**COUNT III – WAIVER AND ESTOPPEL**

94. Electrolux incorporates and realleges paragraphs 1 through 74 as though fully set forth herein.

95. Under Fla. Stat. § 627.426(2)(a), AmGUARD was required to issue a written reservation of rights specifically addressing any coverage defense within 30 days of the date it knew or should have known of that defense.

96. AmGUARD did not issue a written reservation of rights specifically addressing any coverage defense within 30 days of Electrolux's May 22, 2023 tender. AmGUARD's June 6, 2023 tender acceptance letter reserved only "all rights and defenses" in general terms, without identifying any specific coverage position or defense.

97. Because AmGUARD did not satisfy the threshold reservation-of-rights requirement, AmGUARD was required, within 60 additional days, to either deny coverage, defend Electrolux under a non-waiver agreement following full disclosure of the Parties' rights and obligations, or retain counsel mutually agreeable to Electrolux. *See* Fla. Stat. § 627.426(2)(b).

98. AmGUARD did not deny coverage to Electrolux within 60 days.

99. AmGUARD did not defend Electrolux under a non-waiver agreement following full disclosure of the Parties' rights and obligations within 60 days.

100. AmGUARD did not retain counsel mutually agreeable to Electrolux within 60 days. Electrolux's proposed counsel, Bradley, was not permitted to enter its appearance until December 10, 2023, more than six months after Electrolux's tender.

101. Because AmGUARD failed to comply with the requirements of Fla. Stat. § 627.426, AmGUARD has waived, and is estopped from asserting, any coverage defenses to Electrolux's claim.

WHEREFORE, Electrolux demands declaratory judgment against AmGUARD that it has waived and is estopped from asserting any coverage defenses such that AmGUARD owes all amounts sought herein.

**COUNT IV – STATUTORY BAD FAITH UNDER FLORIDA LAW**

102. Electrolux incorporates and realleges paragraphs 1 through 74 as though fully set forth herein.

103. Electrolux has complied with all applicable notice requirements as conditions precedent to filing this statutory bad faith claim. On May 22, 2026, Electrolux filed a Civil Remedy Notice of Insurer Violation with the Florida Department of Financial Services pursuant to Fla. Stat. § 624.155(3)(a), identifying the violations described below. AmGUARD did not cure the violations identified in the Civil Remedy Notice within the 60-day statutory cure period, which expired on July 21, 2026. *See* **Exhibit 6**.

104. AmGUARD owed Electrolux, as an additional insured under the Policy, an independent duty to act fairly and honestly toward Electrolux and with due regard for Electrolux's interests, including a duty to attempt in good faith to settle claims

against Electrolux when, under all the circumstances, it could and should have done so.

105. AmGUARD violated Fla. Stat. § 624.155(1)(b)(1) by failing to attempt in good faith to settle the claims against Electrolux when, under all the circumstances, it could and should have done so, including by:

a. Reserving the entire Policy for RR alone despite RR's status as a judgment-proof insured, while Electrolux faced substantial, collectible excess exposure;
b. Failing to make any attempt to resolve Electrolux's separate exposure once it became apparent that AmGUARD could not settle the claims against all insureds within the Policy limits;
c. Refusing to contribute any amount toward resolving Electrolux's exposure at or after mediation;
d. Failing to engage substantively in settlement until immediately before trial, notwithstanding years of prior notice of the case's value and Electrolux's exposure; and
e. Leaving Electrolux with no option but to fund its own settlement of the Underlying Lawsuit out of pocket.

106. AmGUARD further violated Fla. Stat. § 624.155 by failing to cure the violations identified in Electrolux's May 22, 2026 Civil Remedy Notice within the 60-day statutory cure period. AmGUARD did not pay Electrolux's outstanding defense fees and costs until July 22, 2026, one day after the cure period expired on July 21,

2026, notwithstanding AmGUARD's actual knowledge of the deadline and its own adjuster's prior verbal admission that the amounts were owed.

107. AmGUARD violated Fla. Stat. § 626.9541(1)(i)(3)(a) by failing to adopt and implement standards for the proper investigation of Electrolux's claim, including by imposing a conflicted joint representation on Electrolux over its repeated objection, failing to identify a responsible adjuster for approximately five months following the departure of AmGUARD's initial adjuster, and repeatedly transitioning the claim between adjusters without continuity or accountability.

108. AmGUARD violated Fla. Stat. § 626.9541(1)(i)(3)(c) by failing to acknowledge and act promptly upon Electrolux's communications with respect to the claim, including by failing to respond to Electrolux's repeated attempts to contact AmGUARD regarding the tender conditions in June 2023, failing to substantively respond to Electrolux's demands for a written coverage position throughout 2023, failing to engage with Bradley's repeated pre-mediation communications in 2024 and 2026, and failing to respond to Electrolux's repeated demands regarding outstanding defense costs in 2025 and 2026.

109. AmGUARD's violations, described above and throughout the preceding paragraphs, reflect a sustained pattern of disregard for Electrolux's interests as an additional insured over the course of more than three years, from Electrolux's initial tender in May 2023 through AmGUARD's continuing failures in 2026.

110. As a direct and proximate result of AmGUARD's violations of Fla. Stat. §§ 624.155(1)(b)(1) and 626.9541(1)(i)(3)(a), (c), Electrolux has been damaged in an

amount to be proven at trial, including but not limited to the amount Electrolux paid out of pocket to settle the Underlying Lawsuit, the defense fees and costs AmGUARD refused to timely pay, and the fees, costs, and expenses Electrolux has incurred in enforcing its rights under the Policy.

WHEREFORE, Electrolux demands judgment against AmGUARD in an amount to be proven at trial for AmGUARD's statutory bad faith, plus reasonable attorneys' fees and expenses, interest, and such other and further relief as the Court deems just and proper.

## COUNT V – COMMON LAW BAD FAITH AND BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

111. Electrolux incorporates and realleges paragraphs 1 through 74 as though fully set forth herein.

112. This Count is pled in the alternative to Count IV. Electrolux does not seek a double recovery and acknowledges that, under Fla. Stat. § 624.155(7), it may obtain judgment under either the common law remedy or the statutory remedy, but not both.

113. The Policy constitutes a contract between RR and AmGUARD, under which Electrolux is an additional insured.

114. Electrolux performed its obligations as an additional insured, including timely tendering its defense and indemnity to AmGUARD and cooperating with AmGUARD's defense of the Underlying Lawsuit.

115. AmGUARD was obligated to defend, settle on behalf of, and indemnify Electrolux for its legal liability arising out of the Underlying Lawsuit.

116. AmGUARD's obligations under the Policy included an implied duty of good faith and fair dealing owed to Electrolux as an additional insured.

117. AmGUARD was under a duty to exercise the same degree of care and diligence as a person of ordinary care and prudence would exercise in his or her own business, and to act in good faith and with due regard for Electrolux's interests.

118. AmGUARD was required to seek out and affirmatively attempt in good faith to settle the claims against Electrolux when, under all the circumstances, it could and should have done so if acting fairly and honestly toward Electrolux and with due regard for Electrolux's interests.

119. AmGUARD breached its duties of good faith and fair dealing owed to Electrolux through conduct that was deliberate and undertaken with conscious indifference to Electrolux's interests, including but not limited to:

a. Imposing a conflicted joint representation on Electrolux over its repeated objection;

b. Failing to inform Electrolux or its separate counsel of the scheduling of a deposition central to Electrolux's defense;

c. Failing to adopt and implement standards and procedures for the timely and proactive investigation and handling of Electrolux's claim, including by failing to identify a responsible adjuster for approximately five months;

d. Failing to issue a substantive reservation of rights addressing specific coverage positions;

e. Failing to acknowledge and act promptly upon Electrolux's repeated written communications regarding the conflict of interest, defense costs, and mediation;

f. Reserving the entire Policy for RR alone while Electrolux faced substantial, collectible excess exposure, and failing to make any attempt to resolve Electrolux's separate exposure;

g. Refusing to contribute any amount toward the settlement of the Underlying Lawsuit, leaving Electrolux to fund the settlement out of its own resources despite its insurance coverage and RR's contractual indemnity obligations;

h. Failing to timely pay Electrolux's defense fees and costs, notwithstanding AmGUARD's agreement to do so; and

i. Failing to cure its violations within the statutory cure period following Electrolux's Civil Remedy Notice.

120. AmGUARD's conduct, taken as a whole, reflects a considered business decision to prioritize its named insured, RR, over Electrolux notwithstanding AmGUARD's independent and equal obligations to both insureds under the Policy, and to delay and withhold payment of amounts AmGUARD does not dispute are owed, without any coverage-based justification for doing so.

121. As a result of AmGUARD's course of claims-handling conduct and the breaches set forth herein, Electrolux was exposed to, and was required to satisfy out of pocket, a settlement in excess of the Policy's limits.

122. AmGUARD is legally obligated to satisfy the damages caused by its breach of its duty of good faith and fair dealing, including the settlement amounts Electrolux was forced to fund, and the defense fees, costs, and other damages Electrolux has incurred as a result of AmGUARD's conduct.

WHEREFORE, Electrolux demands judgment against AmGUARD in an amount to be proven at trial for AmGUARD's common law bad faith, plus reasonable attorneys' fees, expenses, interest, and such other and further relief as the Court deems just and proper.

## V. PRAYER FOR RELIEF

Electrolux respectfully requests that the Court:

a. Order a trial by jury on all of Electrolux's claims that are so triable;

b. Enter judgment in favor of Electrolux on each of the enumerated Counts, including damages for the settlement Electrolux funded, unpaid defense fees and costs, and reasonable attorneys' fees, costs, and expenses;

c. Enter a judgment declaring that AmGUARD had an obligation to defend and indemnify Electrolux as an additional insured under the Policy, including an obligation to pay Electrolux's defense costs as they came due and to indemnify Electrolux for the settlement of the Underlying Lawsuit;

d. Enter a judgment declaring that AmGUARD has waived its rights, or is estopped from asserting any coverage defenses under the Policy for defense costs or the settlement amount that Electrolux was obligated to pay as a result of the Underlying Lawsuit;

e. Enter a judgment for the recovery of Electrolux's pre-judgment and post-judgment interest in accordance with applicable law;

f. Award Electrolux its reasonable attorneys' fees and costs as allowed by applicable law; and

g. Grant such further relief as this Court deems just and proper.

Dated: September 14, 2026

**BRADLEY ARANT BOULT CUMMINGS, LLP**

*/s/ Amanda S. Keller*
Amanda S. Keller, Esq.
Florida Bar No. 123697
1001 Water Street, Suite 1000
Tampa, FL 33602
Telephone: (813) 559-5562
Primary Email: akeller@bradley.com
Secondary Email: ajecevicus@bradley.com

*Attorney for Electrolux Consumer Products, Inc.*